I should begin this morning where all federal courts begin, and that is with an assessment of the court's jurisdiction. Three orders are under review here today, and two of them should not be. That is, the Bankruptcy Court's order is issuing an injunction against Ace, the court's order granting Ace's motion to compel arbitration, and the order assessing sanctions. Only the injunction order is appealable, and only that order should have been reviewed by the district court and should be reviewed by this court. To make clear to the court, the relief the trustee is seeking is that the district court order be vacated in its entirety, and that the Bankruptcy Court's injunction order be affirmed. Concerning the arbitration order, seven years, eight years ago now, the Supreme Court laid down a bright line rule in the Green Tree Financial case. Only when an order directs a dispute to arbitration and dismisses all claims with prejudice, leaving the court nothing to do but execute the judgment, is that order appealable. This court has reviewed the Green Tree decision in four separate decisions, and in the upshot of those decisions is this rule. A party cannot appeal an arbitration order unless, at the end of the day, the parties are forced to settle their dispute other than by arbitration. In this case, the Bankruptcy Court granted Ace's motion to compel arbitration. That should be the end of it. Ace raises the pendant appellate jurisdiction argument as a basis for review of the arbitration order. I think the Supreme Court fairly can be said to have rejected that notion in the Green in proceedings with other issues, with other causes of action, are still not appealable. And the Seventh Circuit has ruled explicitly that the pendant appellate jurisdiction argument is not applicable to orders compelling arbitration. Much remains of the thing that could never be. That was the opinion of Judge Posner in this IDS Life Insurance Company case. And the notion is — and this, by the way — You're saying it's not here, clearly. Yes. It's not here, clearly. Right. And the notion is that Congress precluded application of the doctrine when it enacted the Federal Arbitration Act and, specifically, that provision preventing appeals of arbitration orders. I should also note to the Court that there's — Wait. Let me ask you something on a different point, just for a moment. It was something that I noted in the brief. The argument was that the Kashani factors were applied to the wrong proceeding. Yes. That's correct. Are you saying this Court can now independently apply those factors? Because that seemed to be the way your brief went, that we would independently apply them and apply to the correct proceeding, i.e., the Bermuda proceeding — That's right. — that you prevail on that. Is that something we can do here now, or should it be sent back to apply those to the correct proceeding? No. I would state them slightly differently, Your Honor, and that is that the Court should review the Bankruptcy Court's application of those factors to the case under an abuse of discretion. But if you're saying the Bankruptcy Court applied it to the wrong case — No, no, no. The District Court did. District Court. Okay. Thank you. Okay. So this Court doesn't accord any particular deference to the District Court. Instead, what it does is it looks at the Bankruptcy Court order and says, applying the — did the Bankruptcy Court abuse its discretion somehow in applying these factors? Which order? The order in joining the Bermuda case of prosecution. Just the injunction order. Right. Just the injunction order. That's it. Because — So in your view, we would not get to fees that were charged, sanctions that were charged? That's right, Your Honor. And — And we wouldn't get to such issues as you can go to Bermuda as long as you pay the way — pay the trustee's way. Those issues are not before us. I don't think they are. When do they — when do we get those? Well, if the — I don't think the Court will ever receive those, because — You mean the Bankruptcy Court can do these things with no review at all? Yes, I think that's true, because they — So if they sanctioned a lawyer for $50 million, they'd never have an — the lawyer would never have the opportunity of raising that to a — Oh, no. That — that order would be reviewable, Your Honor, at the time that the Bankruptcy Court disposes of the adversary proceeding by a final judgment. Well, if the Bankruptcy Court isn't paid — Okay. So I — that's what I didn't understand. What you're saying is these issues, in your view, would come along later. They would, yes. So it's premature. It's not really never jurisdiction. You're saying it's premature. Oh, right. Now, with respect to the arbitration, the arbitration agreement itself says it's final, binding, and non-appealable. And I suppose if we went back to the Bankruptcy Court and said, enter this arbitration order as a final award, then that would be the end of the day under the arbitration agreement. But that would be assuming that they're not intertwined with the — the injunction such that we would have it all before us. Oh, right. And I — So that's the real issue, whether we're going to see it now, is whether the injunction and the arbitration are intertwined. Well, as I mentioned before, I think the arbitration is not reviewable, with respect, Your Honor, under the Greentree decision and under this Court's decision in Bushley. Until a final arbitration order. Yes. And in the limited review that they get. Yeah, if there is any. And like I say, I don't think — so suppose the arbitrators say, well, $10 million goes to the trustee. I think that's the end of the day, just like any arbitration would be. But isn't there a difference? In ordinarily, in these arbitration issues, it has to stay within the arbitration contract, and we get jurisdiction if the arbitrator goes further. We don't know what the arbitrator is going to do, but certainly the bankruptcy judge decided to go outside the arbitration agreement to make certain modifications.  And in the case of the Koshany case, what we have is a modification of the Koshany injunction. With respect to the modifications? Yes. Well, perhaps the Court would, but I think those can be addressed in the context of the Koshany — this Court's review of the application of the Koshany factors. Now, with regard to the modification, that to me goes to the Barton Doctrine issue. Your Honor may recall in the Crown Vantage case, there was a forum selection clause in the contract between the parties, one of which was the debtor, and the bankruptcy court said, I'm going to disregard that. You didn't bring — you didn't seek my permission, and I'm determining and the Koshany factors that you can only sue the trustee here in the Northern District of California in the bankruptcy court. If the doctrine applies. But eventually, an Article III court should determine whether sending a couple of affidavits off to Barbados is within that doctrine, as distinguished from Ace going over there and doing what they did. Oh, I see what Your Honor says, yes. So when — is that one of the issues that we would take on now? No, I don't think so, because to me it's tied up with the arbitration rather than the order enjoining Ace from pursuing the Bermuda Act. That's the problem I have with the case. The injunction enforces the bankruptcy judge's change of the arbitration. So it seems difficult to be able to say is the injunction right or wrong without making that initial additional determination. So maybe you can help me with that, how we can get — with just a half a loaf, make a decision for a full loaf. I don't think I can help, Your Honor, beyond what appears in the Crown Vantage case, which suggests that the bankruptcy — No, your briefs are very good, but I'm having trouble getting through it. I can only refer to that case which — in which this Court apparently agreed with the bankruptcy court that the provisions surrounding where, when, how, and what the trustee does are within the discretion of the bankruptcy court. Could there be any kind of mandamus to the district court? Mandamus to the district court? Yes. That was not attempted here. No, no. I agree it wasn't attempted here, but would that be one other option if, let's say, the bankruptcy court ordered it to take place in Milan, Italy, would mandate lie at that point to say, look, this is — Totally outside. If we go ahead with it, it's — for some reason, it's going to be impossible. Again, I don't think so. Again, I'm just reading this Court's decision in Bushley. It says as long as you're ordered to arbitration, that's it. Unless at the end of the day, you're ordered to do something other than to arbitrate. So the Court can monkey around, in a sense, with the conditions under which the arbitration occurs, where, when — and particularly this is true in the bankruptcy context, because as you know, the trustee was facing a huge trial in November 2005, and Ace brought on this surreptitious injunction in Bermuda in March. So the bankruptcy court had to say, I'm going to prioritize here. I'm controlling this fellow, and I'm going to decide that the litigation goes first. And therefore, I'm staying in this for 60 days. After the case settles, or you try it, then you come back to me. Now, surely that's reasonable, and it's consistent with the Barton doctrine. And I think that's what he did. Now, maybe this Court should review the — I'm fairly confident that these provisions would be found reasonable, particularly since the Court did grant the arbitration order. So if this Court is inclined to review it, even though I don't think there's pendent appellate jurisdiction over it, under the decision in Bushley and the decision in Greentree, I feel pretty confident that the order would be affirmed. Yeah, you're talking about limited to the changes to the arbitration. Yes, absolutely. And in recalling, too, that in Crown Vantage, that's precisely what the bankruptcy court did. It says, you've got a forum selection clause that says you've got any dispute regarding the settlement agreement that's going to be brought in Delaware. And they did bring it in Delaware, the Fort James entities. And I know this case well, because we represented a trustee in it. In the bankruptcy court, Judge Newsom said, no, I'm going to disregard that forum selection clause, because where, when, and how a bankruptcy trustee does anything is up to me. Because he's an officer of this court, and I have in-rim jurisdiction over the property that he's administering. And that underlies, that concept underlies both the injunction and the order compelling arbitration and its change in some of its terms. Yes, they were changed. And it also underlies, to some extent, the sanctions order. I think we have briefed pretty extensively the five Kashani factors. I don't feel that I need to go through them, unless the court has any questions on those particular factors. I feel pretty confident about the application of them. And what I'd like to do in the two minutes and 45 seconds left is just reserve any time for rebuttal. You may do that. Thank you. Good morning, Your Honors. Lee Godfrey, on behalf of ACE. The time is now. The time isn't off at some point in the future. When this court and its de novo review of the orders of the district court will, I trust, affirm the rulings of the district court in the case.  orders of the district court. There's nothing about Kashani. There's nothing about Greentree that does anything about the state of the law in the Ninth Circuit, which provides for pendent jurisdiction, with which, of course, the court's familiar. Both of the orders are properly before you, because they are, Your Honor, inextricably intertwined. You can't talk about and decide the issue of the injunction. without deciding the issue of the order. Those two things, if there was ever an intertwinement of issues, that's true in this case. Not true of the sanctions order, though, is that? Not true of the sanctions order, Your Honor. Of course, it's our position in our briefing that the sanctions order, where the court ruled against us below, should be reversed by this court. In terms of jurisdiction, why would we have jurisdiction over the sanctions order? Well, I suppose the answer to that, Your Honor, is given that, why wouldn't you have jurisdiction over the sanctions order? Because it is an order of the district court below. I think it's properly before you. I think that you do have jurisdiction to hear the appeal on that issue. Well, it doesn't relate to a violation of the injunction or anything else. No, it doesn't. So why is it pending? Excuse me, why is it pending or why is it interrelated? The court actually says in one of the decisions that it is. They don't say it's inextricably intertwined, but they say it's incident to. They use some different language, that the sanctions are incident to the other matters that were before the court. And the court heard it on that basis. Your Honor, the courts below so-called, quote, granted ocean-based motion to compel arbitration. But, in fact, under the substance of the Arbitration Act, the court denied, the bankruptcy court denied, as the district court held, denied our application to have this matter referred to binding arbitration in accordance with the terms of the contract. Let me ask you a question, counsel, and I don't have an answer to this.  can use. I can sort of fit this together around. And I was thinking about this case. Now, I'm trying to admit that it's not easy for me, and I certainly haven't made up my mind completely. But one of the things that was persuasive to me, which would be against your position, goes as follows. That if we look at this insurance policy just as an asset of the estate, then the trustee has a responsibility to preserve it. And if this asset happened to be a house, and there was a mortgage on the house, and there was a right to foreclose, the bankruptcy court could, often does, tell them, no, we're not going to do that now. We're going to hold this in abeyance, because I'm preserving the asset, and I have that responsibility. If we look at this insurance policy as just an asset of the estate, why wouldn't the bankruptcy court have a responsibility to preserve that asset in a way that, to make sure it's there at the time the trustee is going to dispose of the estate? Your Honor, the distinction between, or the issue of whether the insurance policy is an asset of the estate goes to, among other things, whether it's an NREM or an impersonum proceeding. And if you look at Judge Posner's language in U.S. drafts, it's probably as good a place as any to look. He says an insurance policy is not the kind of, quote, property we are talking about when we talk about property of the estate. What the estate has, arguably, is a position that is liable under the DNO policy. It isn't that the estate has got an asset in the sense of property of the estate, as discussed by Judge Posner in the U.S. brass case that's in our briefing. The estate doesn't, and when the estate would have what would amount to NREM rights is when there's been a bankruptcy ruling on the liabilities under the insurance policies, and the insurance policy and the court, the arbitration court says, yes, Ace, you're liable under this policy, then when Ace paid that, the bankruptcy court would have jurisdiction, would have control over those proceeds of that policy. It does not follow from that. And it would be contrary to both Judge Posner's reasoning and the case in the Ninth Circuit. It doesn't follow that the initial matter, the arbitration deciding what Ace's and the insurer's relative rights are under the insurance policy, that that gives the bankruptcy court the kind of jurisdiction that he has over NREM proceeding. So your argument is that the insurance policy isn't a part of the bankruptcy estate at all? That's going too far, Your Honor, but what I am saying is that first order of business is an arbitration determining whether there is liability under the policy. But doesn't the bankruptcy court, if, for example, the same thing in another action, if they were a civil action, et cetera, the bankruptcy court can make the determination whether they can allow it to proceed separately or through a trustee's action. Doesn't the bankruptcy court have the power to ensure that that is done in terms of the arbitration that the asset is preserved and handled through the estate? What the bankruptcy court is entitled to is to take the outcome of the arbitration and deal with the disposition, if there is any, of the proceeds if Ace is unsuccessful in the arbitration. That's what the bankruptcy court has a right to do. It does not have the right to exercise exclusive jurisdiction over the terms and conditions and the responsibilities of the insurance policy. That is the very matter that is subject to arbitration. This arbitration clause was an international arbitration clause. It was negotiated by Ace and the ultimate insurers. As the court knows, it is entitled to really unmatched discretion. In other words, the courts give more viability to arbitration clauses, particularly in the international context, than perhaps anything else. And we can see the extraordinary lengths to which the courts are using arbitration clauses in looking, for example, at Mitsubishi or the Shirk case. So where you are is you're in a situation where the, and for that matter, it's the law of the United States, the Federal Arbitration Act. It's the law of the United States in connection with the treaties regarding arbitration. As the courts have said time and again, arbitration, a right to arbitration, is a right to be used. So you're dealing, whether we're crazy about it or not, we're dealing with a situation where the arbitration clause gets great deference, is entitled to great deference. And there's no evidence in this record of any reason why this matter should not be compelled to arbitration in Bermuda as negotiated and agreed to by the parties. There is zero in the record about why that shouldn't happen. There's nothing in the record about why the bankruptcy court, although he's, quote, granted our motion, has the ability to modify the terms of the injunction, excuse me, the terms of the arbitration clause. And that's what he's done. And that was a serious, heavily bargained for right of Ace, the insurance company. Do you have the right, does Ace have the right to file this lawsuit in Bermuda without first seeking the permission of the bankruptcy judge? Putting aside, Your Honor, the issue of the viability of international application of the Barton Doctrine, going back into the 19th century, but just putting that aside for the moment. If, in fact, the Barton Doctrine applies in an international context, and that's problematical, that a U.S. common law remedy would control over the treaties and the Federal Arbitration Act and the rest of it. Yes. If, assuming it applies in that context, Ace would not be entitled to sue the trustee without approaching the bankruptcy court and getting the bankruptcy court's permission to sue the trustee. It does not, topside or bottom, follow from that, however, that that has anything to do with the construction of the insurance policy and the arbitration over the insurance policy. Mr. Smith, time and again, suggests and tries to get, make this case be over something besides the order of arbitration that is the claim, that is the case to which we apply these factors. We apply the impersonum versus in rem distinction to that case, not the case of Ace suing the trustee. If Ace sued the trustee wrongfully, then perhaps Ace rightfully should bear sanctions as were awarded. We disagree. But it doesn't do a thing. The Kashani, first place, there wasn't even an arbitration clause in it. Second place, talking about Green Tree before I forget it, Green Tree did not in any way overrule Ninth Circuit law concerning what, when you have jurisdiction to have an appeal. It involved a different section of the Arbitration Act. It involved a circuit dispute over what was final. It did not even mention Quackenbush, the basis in the Ninth Circuit for pendent jurisdiction. The Meredith case, which they don't mention, Ninth Circuit, pendent jurisdiction is alive and well. You have pendent jurisdiction. The district judge had pendent jurisdiction over the order of compelling arbitration as a result of his jurisdiction over the injunction. And you have the same jurisdiction. And it's not for some later date. It's not let's go and arbitrate this thing according to an arbitration clause that the bankruptcy judge would like to have and then someday come back and arbitrate it again when we get to the end of the insurance and the policy. So the Green Tree is a rabbit trail. It doesn't get at all your pendent jurisdiction. Perhaps counseling and rebuttal will tell us that there is no longer pendent jurisdiction and that Green Tree overruled Quackenbush. I don't think so because the fact of the matter is we all know that if you have that pendent jurisdiction over the order of compelling arbitration on terms different from what the parties worked out, that you have jurisdiction over that as inextricably intertwined with the issue of the injunction, whether we should be able to proceed on the basis of the clause instead of proceeding in a time and place and under methods, the bankruptcy court substitutes for the contract. If I could, international commercial arbitration agreements, which is what we have, are entitled to near absolute deference under U.S. Supreme Court precedent. Even in situations where a contrary policy might trump enforcement of an arbitration agreement in a domestic case, an international arbitration agreement must be enforced. The cases are in our briefing. Even domestic arbitration agreements must be enforced in bankruptcy for non-core claims. This is a non-core claim. And the whole jurisdictional issue between the bankruptcy court and the arbitration panel is driven by this distinction between these distinctions. If we were to consider this to be a core claim rather than a  core non-core claim, would your arguments fall? It wouldn't do me any good, for sure, Your Honor. Let me survive. Let me put it differently. If we were to disagree with you about the core versus non-core dichotomy, which of your other arguments, jurisdictional and otherwise, would survive? Well, can I speak first to the core non-core before I throw that overboard? Yeah, you're almost out of time, though, but I understand your position on that. I just want to understand its relationship to the other arguments that you're making. Your Honor, I don't believe it would follow, even if this were found to be a core proceeding. I don't have a case where it's been found to be a core proceeding, and the issue is whether or not that Trump's proceeding to back to the arbitration. I don't believe that it would eliminate the efficacy of the arbitration clause in the contract and the agreement of the parties to arbitrate those issues. It's a pre-petition contract. It's a pre-petition breach. It's a claims-made contract. All the claims relate back to the time the class action was filed. It is a classic non-core case. Okay, but that doesn't really answer my question, because if we disagree with you on that point, does it affect the jurisdictional analysis with respect to the motion to arbitrate and the motion for sanctions? I think what it does, what it would do, I believe, arguably, is give the bankruptcy judge the ability to make a decision more discretion, more discretion, than he or she would have if, as I think undeniably is the case, it's a non-core proceeding. Well, what would be the limits of that jurisdiction? Excellent question. Thank you. I think that the bankruptcy judge could exercise properly his additional discretion without doing violence to the agreement that was negotiated between the parties, particularly as to, I think he could deal with the situation without vitiating the contract. It is not a clear-cut situation, no doubt about it, Your Honor. But frankly, it's not a problem for me, subject to what the court thinks. Because it is non-core. I think we understand your position. Thank you, counsel. Thank you, Your Honor. I guess I'll use all my time. You have. Those sanctions shouldn't be upheld against us. All we did was try to enforce our rights to have this thing arbitrated in Bermuda, and imposing a $100,000 sanction against the company, when even the bankruptcy judge was saying, you know, it may well be that you're right, and this is going to go to Bermuda two days before the hearing in Bermuda. I mean, it's not fair. We understand your position. Thank you, counsel. We'll hear a brief rebuttal. Thank you, Your Honor. Just a couple of quick points. I listened carefully to counsel, and he is again propagating the error made by the district court. The question is not whether the trustee's action is core, it's whether the ACE's action in Bermuda is a core proceeding, and that's one aspect of one of five Kashani factors. The action against the trustee in Bermuda was an action against the administrator of the estate. Any action against an administrator of an estate, like a trustee, is a core action by definition. N. Ray Harris, Pine Mills, N. Ray Ferrante, numerous decisions of this court. Number two. I recall you saying that factor is determinative, aside from the other Kashani factors? Yeah, that goes to the Barton Doctrine violation. Is the policy and proceeds property of the estate, and therefore does the bankruptcy court have in rem jurisdiction? Indisputably, both by the terms of the plan of reorganization or liquidation, and by assignment of the directors and officers of their rights to proceeds to the trustee. So U.S. brass has no bearing on this case. This is an action where the trustee is doing what he was employed to do, which is to monetize an asset of the estate, the insurance policies. Thirdly, in personam jurisdiction, make no mistake, Ace contested personal jurisdiction in the bankruptcy court. They lost. They never raised it in the district court. They do not raise it here. That issue is gone. The bankruptcy court has jurisdiction to issue these five factors. The injunction order itself can be reviewed strictly on the basis of the five Kashani factors. There need not be a Barton Doctrine violation. If Ace had come into the bankruptcy court first before filing their suit, I wouldn't have a claim for sanctions. I wouldn't have a Barton Doctrine violation claim. All I would have is a claim that judge applying these five factors, an injunction should issue against Ace's prosecution of the Bermuda court, not the Bermuda court, Ace's prosecution of it. The arbitration order, on the other hand, is based on the concepts which suffuse the Barton Doctrine. And the fact that Mr. Smith is the trustee of Boston Chicken and therefore is clothed with this quasi-judicial immunity. You can't sue him. And if you do, I have the jurisdiction to decide where, when, and how. So this is maybe the analytical framework which your Honor was looking for. I'm not sure that answers your Honor's question, but I'll try as hard as I can. I've got 10 seconds left, but I'll conclude now. Thank you. I think you're on the minus end, so we appreciate that your argument has been received.
judges: Wallace, Graber, Tallman